**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| OCEANA SERVICES AND PRODUCTS COMPANY and ANNE C. GILSON, EXECUTRIX OF THE ESTATE OF JAMES S. GILSON (DECEASED),<br><br>                Plaintiffs,<br><br>        v.<br><br>HOMETOWN COFFEE COMPANY and THOMAS P. KAZAS,<br><br>                Defendants. | Civil Action No.<br><br><br>Electronically filed |

**COMPLAINT**

Plaintiffs, Oceana Services and Products Company ("Oceana") and Anne C. Gilson, Executrix of the Estate of James S. Gilson (Deceased) (the "Estate"), by and through their attorneys, Morella & Associates, a Professional Corporation, complain against Defendants, Hometown Coffee Company ("Hometown") and Thomas P. Kazas ("Mr. Kazas"), and in support thereof, aver as follows:

**I. INTRODUCTION**

1.    This case is related to <u>Partners Coffee Company, LLC versus Oceana Services and Products Company, *et al.*</u>, U.S.D.C. W.D.Pa. (Pittsburgh) at Civil Action No. 2:09-cv-236 before the Honorable William L. Standish (the "09-236 Case").

2.    Partners entered into, *inter alia*, an Asset Purchase Agreement with Oceana and Mr. Gilson whereby Partners purchased most of the assets of Oceana and a Consulting Agreement with Oceana whereby Oceana would continue to consult with Partners after the sale.

3. Partners breached the relevant agreements. Oceana and the Estate assert claims for breach of contract, fraud-in-the-inducement, negligent misrepresentation, and to pierce the veil of Partners in the 09-236 Case.

4. Upon information and belief, Mr. Kazas and/or Hometown Coffee Company are the sole members of Partners. They are liable under the piercing the veil doctrine. In addition, Hometown and/or Mr. Kazas participated in the alleged tortious conduct and are liable pursuant to the participation theory. They are not parties to the 09-236 Case.

5. This Complaint is to hold Mr. Kazas and Hometown liable for their participation in the tortious conduct and for the breach of the agreements pursuant to the piercing the veil doctrine.

## II. PARTIES

**A. PLAINTIFFS**

6. Plaintiff, Oceana, is a Georgia corporation with its principle offices located at 154 Helmswood Circle, Marietta, Cobb County, Georgia 30064.

7. Plaintiff, the Estate, is the estate of James S. Gilson ("Mr. Gilson") (Deceased) filed in Probate Court of Cobb County, Georgia at Estate No. 09-1527. Anne C. Gilson ("Mrs. Gilson") is the Executrix of the Estate with an address in Marietta, Cobb County, Georgia.

**B. DEFENDANTS**

8. Defendant, Hometown, is a Pennsylvania corporation with its registered office located at 375 Southpointe Boulevard, Suite 440, Canonsburg, Washington County, Pennsylvania 15317 and its principle office located at 130 Southpointe Drive, Bridgeville, Allegheny County, Pennsylvania 15017.

9. Defendant, Mr. Kazas, is an adult male individual currently residing in Canonsburg, Washington County, Pennsylvania.

### III. JURISDICTION AND VENUE

**A.   JURISDICTION**

10. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 where the matter in controversy exceeds the sum or value of $75,000 and there is complete diversity between the Plaintiffs, who reside in Georgia, and the Defendants, who reside in Pennsylvania.

**B.   VENUE**

11. Venue is proper pursuant to 28 U.S.C. § 1391 where a substantial part of the events or omissions giving rise to the claims occurred in this district, and all the defendants reside in this district.

12. Venue is proper pursuant to ¶14.8 of the Asset Purchase Agreement (attached hereto as Exhibit "A" and incorporated by reference) and ¶14 of the Consulting Agreement (attached hereto as Exhibit "B" and incorporated by reference).

### IV. BACKGROUND

13. Prior to May 2, 2008, Oceana and Mr. Gilson had a long standing (ten years) business relationship with Hometown and its President, Mr. Kazas. To wit, Oceana supplied Hometown with coffee.

14. Prior to May 2, 2008, Mr. Gilson and Mr. Kazas discussed the sale of Oceana (then known as Partners Coffee Company, Inc.).

15. The parties negotiated and agreed to terms including, for example, that the transaction would be an asset purchase (as opposed to a stock purchase), the purchase price, and the date for payment of the purchase price. In addition, it was contemplated that the purchaser

would be a company Mr. Kazas or Hometown Coffee Company would form specifically for this transaction.

16. Mr. Kazas or Hometown Coffee Company then formed (or caused to be formed on his behalf) that new company, Partners Coffee Company, LLC, specifically for this transaction.

17. Closing was set to occur on May 2, 2008.

18. At closing, a number of documents would be signed and/or provided including an Asset Purchase Agreement, Bill of Sale, Assignment and Assumption Agreement (Real Property Lease), Consent of Landlord to Assignment and Assumption Agreement, Assignment of Intellectual Property, Consulting Agreement, Restrictive Covenant Agreement, and others.

   **A.   The Asset Purchase Agreement**

19. The Asset Purchase Agreement provided for the sale of substantially all of the business and operating assets owned or utilized by Oceana in connection with its business of purchasing, processing, and packaging coffee products.

20. A material term of the Asset Purchase Agreement was, *inter alia*, that Oceana would be paid by Partners $800,000 in full at closing.

21. At the closing, Partners did not pay the purchase price as required by the Asset Purchase Agreement.

22. Instead, on the scheduled closing date of May 2, 2008, Partners represented via a teleconference call that it was obtaining bank financing to pay the purchase price and that the funding would be completed on May 5, 2008 if Partners received all of the signed closing documents by that date. Because of the geographic location of the parties, the closing was being done via telephone and the mails.

23. Partners' agents, its attorneys, made this representation on a telephone conference call with Mr. Gilson. Mr. Kazas participated in this teleconference call on behalf of Partners.

24. In fact, Partners' attorneys told Mr. Gilson that Partners had completed its loan agreement and its lender was to transfer the required funds into Partners' attorneys' escrow account. This was false. The funds transfer never occurred and Partners' attorneys were unable to explain why.

25. Relying on these representations, Mr. Gilson executed all of the relevant documents including, but not limited to, the Asset Purchase Agreement and the Consulting Agreement, and forwarded the same to Partners' attorneys.

26. On May 5, 2008, Partners' attorneys confirmed via telephone that they had received Mr. Gilson's correctly signed documents. Partners' attorneys also stated that Mr. Kazas had still not signed one of the necessary documents on behalf of Partners, but that the necessary document was in route via courier.

27. Later on May 5, 2008, Partners' attorneys told Mr. Gilson that he could not locate Mr. Kazas, whom he believed to be out of the country, and that the funds would **not** be transferred that day.

28. Oceana and Mr. Gilson later learned that Mr. Kazas was not out of the country during this timeframe, but was instead in Las Vegas, Nevada.

29. On May 8, 2008, Partners' attorneys advised that Partners was looking into a second lending source and needed to determine which lender was offering the best deal for Partners.

30. Oceana and Mr. Gilson relied on Partners, Mr. Kazas, and their agents' representations that bank financing had been secured to pay the full purchase price and that the full purchase price would be paid.

31. Partners has never paid the full purchase price.

32. In addition, the Asset Purchase Agreement provides that Oceana and Mr. Gilson are entitled to all accounts receivables of Oceana existing on the closing date. See Ex. "A," ¶2.2.

33. Nevertheless, Partners has improperly retained monies paid in connection with accounts receivables existing on or before the closing date.

34. Partners was also required to employ Mrs. Gilson pursuant to ¶4.1 of the Asset Purchase Agreement. See Ex. "A." It has not done so.

**B.     The Consulting Agreement**

35. In connection with the Asset Purchase Agreement, Partners and Oceana executed a Consulting Agreement dated May 2, 2008.

36. Pursuant to the Consulting Agreement, Partners retained Oceana to provide services, through Gilson, to Partners through April 30, 2011, with an option for Partners to extend the terms of the Agreement for two consecutive one year periods thereafter.

37. Execution of the Consulting Agreement was a condition precedent to the parties entering into the Asset Purchase Agreement.

38. After Partners failed to pay the purchase price as required under the Asset Purchase Agreement, Partners wrongfully purported to terminate the Consulting Agreement, thereby depriving Oceana of the compensation that it was to receive thereunder.

**C.     The Economic Harm**

39. Partners has failed to pay Oceana $380,000 towards the purchase price as required by the Asset Purchase Agreement.

40. Partners owes Oceana approximately $20,000 for the accounts receivables Partners improperly retained.

41. Partners has failed to pay Oceana $105,159.42 towards the Consulting Agreement.

42. Partners has failed to pay Oceana the performance bonus of approximately $35,416.65 pursuant to the Consulting Agreement.

43. Partners has failed to pay Oceana the Retention Bonus of approximately $35,416.65 pursuant to the Consulting Agreement.

44. Partners has failed to pay Oceana the Three Year Consulting Agreement Contingent EBITDA Based Bonus pursuant to the Consulting Agreement.

45. Partners owes $90,000 for failing to employ Mrs. Gilson as an employee/consultant.

46. Oceana is owed statutory interest.

47. Oceana and Mr. Gilson are entitled to reimbursement from Partners for all expenses incurred by them in connection with the Asset Purchase Agreement including, but not limited to, reasonable attorneys' fees actually incurred. See Ex. "A," ¶12.3.

48. Hometown and Mr. Kazas' conduct is especially egregious and involves acts that are malicious, wanton, reckless, willful, and/or oppressive.

## V. CLAIMS

### COUNT I
### PIERCING THE COMPANY VEIL
### (OCEANA & GILSON vs. HOMETOWN & KAZAS)

49.     Oceana and the Estate incorporate paragraphs 1 through 48 of their Complaint as if fully set forth herein.

50.     Upon information and belief, (a) company formalities were not observed or company records kept for Partners; (b) there were no other members other than the company officers and directors for Hometown Coffee Company; and (c) Mr. Kazas and/or Hometown Coffee Company used assets of Partners for their own personal use.

51.     Upon information and belief, (a) Partners was insufficiently capitalized at the outset; (b) there was intermingling of funds between and among Hometown Coffee Company and Partners as well as the personal assets of Mr. Kazas; (c) officers, managers, and directors, or the equivalent thereof, of Partners, if any, were not functioning; (d) Partners did not pay distributions in the regular or ordinary course of business; and (e) Mr. Kazas and/or Hometown Coffee Company held themselves out as conducting the business affairs without the use of company names and without identifying that their actions were taken as an officer or manager of Partners.

52.     Upon information and belief, Partners is the alter ego of Mr. Kazas and/or Hometown Coffee Company or were operated as a single entity.

## COUNT II
### BREACH OF CONTRACT – ASSET PURCHASE AGREEMENT
### (OCEANA & GILSON vs. HOMETOWN & KAZAS)

53. Oceana and the Estate incorporate paragraphs 1 through 52 of their Complaint as if fully set forth herein.

54. Partners entered into a contract with Oceana and Mr. Gilson. The Asset Purchase Agreement is the contract and sets forth the essential terms of their agreement. See Ex. "A."

55. Oceana and Mr. Gilson complied with the contract's terms. To wit, they have fulfilled all duties, obligations and conditions precedent with regard to enforcement of the Asset Purchase Agreement.

56. As set forth above, Partners has substantially and materially breached the terms of the Asset Purchase Agreement by

 a. failing and refusing to pay to Oceana the purchase price as required thereunder;

 b. improperly retaining accounts receivables; and

 c. failing to employ Mrs. Gilson.

57. Partners breached the contract's implied covenant of good faith and fair dealing by attempting to evade the spirit of the bargain, utilizing subterfuges and inaction to evade its obligations, and willfully rendering imperfect performance.

58. Despite demand, Partners has failed and refused to remedy its breach of the Asset Purchase Agreement.

59. Oceana and the Estate have suffered and will continue to suffer substantial damages as a result of Partners' breach of the Asset Purchase Agreement.

60. Hometown and Kazas are liable for this breach pursuant to the piercing the veil theory.

9

## COUNT III
### BREACH OF CONTRACT – CONSULTING AGREEMENT
**(OCEANA vs. HOMETOWN & KAZAS)**

61.     Oceana and the Estate incorporate paragraphs 1 through 52 of their Complaint as if fully set forth herein.

62.     Partners entered into a contract with Oceana. The Consulting Agreement is the contract and sets forth the essential terms of their agreement. See Ex. "B."

63.     Oceana has fulfilled all duties, obligations and conditions precedent with regard to enforcement of the Consulting Agreement.

64.     As set forth above, Partners has substantially and materially breached the terms of the Consulting Agreement by impermissibly purporting to terminate the Consulting Agreement.

65.     Despite demand, Partners has failed and refused to remedy its breach of the Consulting Agreement.

66.     Oceana has suffered and will continue to suffer substantial damages as a result of Partners' breach of the Consulting Agreement.

67.     Hometown and Kazas are liable for this breach pursuant to the piercing the veil theory.

## COUNT IV
### FRAUD-IN-THE-INDUCEMENT
**(OCEANA & GILSON vs. HOMETOWN & KAZAS)**

68.     Oceana and the Estate incorporate paragraphs 1 through 52 of their Complaint as if fully set forth herein.

69.     Partners, itself and its authorized agents, represented to Oceana and Mr. Gilson that:

    a.    Partners was obtaining bank financing to pay the full purchase price and that funding would be completed on May 5, 2008 if Partners received all of the closing documents fully executed by Oceana by that date;

    b.    Partners had completed its loan agreement and its lender was to transfer the required funds into Partners' agents' (the law firm representing it in the transaction) escrow account by May 5, 2008;

    c.    on May 5, 2008 Mr. Kazas was out of the country;

    d.    on May 8, 2008 Partners was looking into a second lending source and needed to determine which lender was offering the best deal for Partners;

    e.    Partners would retain Oceana pursuant to a Consulting Agreement for the term of the agreement;

    f.    Partners would employ or retain Mrs. Gilson as an employee or consultant.

70.    Partners, itself and its authorized agents, without privilege, deliberately failed to disclose to Oceana and Mr. Gilson that:

    a.    Partners had not obtained bank financing by May 2, 2008;

    b.    Funding for the full purchase price would not be completed on May 5, 2008 if Partners received all of the closing documents fully executed by Oceana by that date;

    c.    Partners had not completed the loan agreement of its lender (in order to fully finance the transaction) by May 2, 2008;

    d.    The lender was not to transfer the funds into Partners' agents' (law firm) escrow account by May 5, 2008;

  e. Mr. Kazas was in Las Vegas, Nevada on May 5, 2008;

  f. Upon information and belief, Partners was not looking into a second lending source or, in the alternative, was looking into a second lending source because the first lender could not or would not finance all or part of the transaction;

  g. Partners was undercapitalized;

  h. Partners was unable or unwilling to obtain sufficient debt financing in order to pay the purchase price pursuant to the Asset Purchase Agreement or to finance the Consulting Agreement;

  i. Partners had no intention of retaining Oceana for the term of any Consulting Agreement;

  j. Prior to (and after) executing the documents, Partners intended to promptly terminate the Consulting Agreement after its execution on a false pretext;

  k. Prior to (and after) executing the documents, Partners had no intention of employing or paying Oceana for consulting services as set forth in the Consulting Agreement; and

  l. Prior to (and after) executing the closing documents, Partners never intended to retain or employ Mrs. Gilson as an employee or consultant.

71. The representations were material in that Oceana and Mr. Gilson would not have executed or otherwise entered into the Asset Purchase Agreement, Consulting Agreement or any of the other closing documents had they known the truth. They were material also in that the representations were made knowingly and involved a non-privileged failure to disclose. Partners concealed these omissions in order to deceive Oceana and Mr. Gilson into believing Oceana would receive the full purchase price as required by the Asset Purchase Agreement by May 5,

2008 and to induce Mr. Gilson and Partners into executing the closing documents and delivering them to Partners or its agent.

72. The representations made by Partners were made with knowledge that they were false, conscious ignorance of the truth, or recklessness as to whether the representations were true or false.

73. The representations made by Partners were made with the intent of misleading Oceana and Mr. Gilson into relying on them and with the intent of inducing them to execute, *inter alia*, the Asset Purchase Agreement and the Consulting Agreement and deliver the agreements to Partners or its agent.

74. Oceana and Mr. Gilson relied on the above-described fraudulent misrepresentations made by Partners. Their reliance was justifiable in that: (a) Oceana and Mr. Gilson had a long standing (ten year) business relationship with Mr. Kazas and Hometown Coffee Company; (b) Mr. Kazas and Partners were represented by sophisticated legal counsel and said legal counsel made some or all of the above-referenced representations to Mr. Gilson and Oceana; (c) the closing occurred through the use of the mails due to the geographic locality of each party; and (d) Mr. Kazas, Partners, and its agents assured Oceana and Mr. Gilson that the terms of the agreements would be complied with if Mr. Gilson executed the documents and forwarded them to Partners' legal counsel.

75. The above-described damages suffered by Oceana and Mr. Gilson are the proximate result of Partners above-described fraudulent material misrepresentations and Oceana and Mr. Gilson's justifiable reliance thereon.

76. Hometown and Kazas are liable for this breach pursuant to the piercing the veil theory.

77. Hometown and Kazas are liable for this breach pursuant to the participation theory.

## COUNT V
### NEGLIGENT MISREPRESENTATION
### (OCEANA & GILSON vs. HOMETOWN & KAZAS)

78. Oceana and the Estate incorporate paragraphs 1 through 52 & 68-77 of their Counterclaim as if fully set forth herein.

79. Partners made the above-described misrepresentation of material facts.

80. Partners made the misrepresentations under circumstances in which Partners ought to have known their falsity.

81. Partners made the misrepresentations with the intent to induce Oceana and Mr. Gilson into executing the Asset Purchase Agreement, Consulting Agreement, and other closing documents and forwarding or delivering them to Partners' legal counsel.

Partners misrepresentations resulted in injury to Oceana and Partners who acted in justifiable reliance on the misrepresentations.

82. Hometown and Kazas are liable for this breach pursuant to the piercing the veil theory.

83. Hometown and Kazas are liable for this breach pursuant to the participation theory.

### VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, Oceana Services and Products Company and Anne C. Gilson, Executrix of the Estate of James S. Gilson (Deceased), respectfully request that this Court enter judgment in their favor and against Defendants, Hometown Coffee Company and Thomas P.

Kazas, for damages exceeding $75,000.00, punitive damages, attorneys' fees, interest and costs, and other such relief as this Court deems just proper.

                                              Respectfully submitted,

                                              MORELLA & ASSOCIATES
                                              A PROFESSIONAL CORPORATION

January 12, 2010

                                              /s/ Albert N. Peterlin, Esquire
                                              PA84180
                                              706 Rochester Road
                                              Pittsburgh, PA 15237
                                              (412) 369-9696
                                              (412) 369-9990 fax
                                              apeterlin@morellalaw.com

                                              *Attorneys for Plaintiffs, Oceana Services and Products Company and Anne C. Gilson, Executrix of the Estate of James S. Gilson (Deceased)*